1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRIAN DARNELL EDWARDS,

11            Plaintiff,              No. 2:10-cv-1264 MCE JFM P

12       vs.

13   HIGH DESERT STATE PRISON,
     et al.,
14
            Defendants.              FINDINGS & RECOMMENDATIONS
15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  This action is proceeding on plaintiff's third amended complaint, filed April

18   22, 2011 (TAC).  (ECF No. 30.)  Therein, plaintiff claims that defendant Perez violated

19   plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States

20   Constitution by confiscating from plaintiff two books authored by Robert Greene pursuant to a

21   ban on possession of those books at High Desert State Prison (High Desert).  Plaintiff also claims

22   that defendants Williams, Davis, Simpson, and McDonald all interfered with plaintiff's right to

23   access the courts.  This matter is now before the court on defendants' October 31, 2012 motion

24   /////

25   /////

26   /////

1

for summary judgment.  (ECF No. 82.)  Plaintiff has filed an opposition to the motion (ECF No. 94) and defendants have filed a reply brief (ECF No. 97).[1]

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or

---

[1]  On December 10, 2012, plaintiff filed a motion seeking court ordered access to the prison law library in order to make copies of a Rule 56(d) request to serve on defendants.  On December 17, 2012, plaintiff filed a motion pursuant to Federal Rule of Civil Procedure 56(d), which he styled as a motion pursuant to Rule 56(f), seeking a continuance of defendants' motion for summary judgment pending completion of additional discovery as well as an extension of time to conduct discovery.  Defendants responded to the latter motion in their December 30, 2012 reply brief in support of the summary judgment motion.  (ECF No. 97.)  Accordingly, plaintiff's December 10, 2012 motion will be denied as moot.

Pursuant to the scheduling order filed in this action on February 23, 2012 (ECF No. 43), discovery was to be completed by June 8, 2012.  (Order filed Feb. 23, 2012 (ECF No. 43) at 6.)  Plaintiff's previous motion for an extension of time to conduct discovery was denied by order filed July 31, 2012 due to plaintiff's failure to identify what additional discovery he required.  (Order filed July 31, 2012 (ECF No. 67) at 1-2.)  With his Rule 56(d) request, plaintiff submitted, for each of the five defendants in this action, a set of requests for admissions and a second set of interrogatories, and for defendants Perez and McDonald a second request for production of documents.  (Ex. A to Pl.'s Rule 56(d) Mot. filed Dec. 17, 2012 (ECF No. 96).)  However, a prerequisite to a meritorious Rule 56(d) motion is a showing "by affidavit or declaration that, for specified reasons, [the party opposing a summary judgment motion] cannot present facts essential to justify its opposition . . . ."  Fed. R. Civ. P. 56(d).  Plaintiff has not made the required showing in his motion, nor has he presented grounds that would warrant reopening discovery at this late stage of these proceedings.  Accordingly, plaintiff's Rule 56(d) motion and his motion for extension of time to conduct discovery in this action will be denied.

1   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

2   support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

3   of proof at trial, "the moving party need only prove that there is an absence of evidence to

4   support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at

5   325.); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

6   adequate time for discovery and upon motion, against a party who fails to make a showing

7   sufficient to establish the existence of an element essential to that party's case, and on which that

8   party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure

9   of proof concerning an essential element of the nonmoving party's case necessarily renders all

10  other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so

11  long as whatever is before the district court demonstrates that the standard for entry of summary

12  judgment, . . ., is satisfied." Id. at 323.

13          If the moving party meets its initial responsibility, the burden then shifts to the

14  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

15  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

16  establish the existence of this factual dispute, the opposing party may not rely upon the

17  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

18  form of affidavits, and/or admissible discovery material, in support of its contention that the

19  dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing

20  party must demonstrate that the fact in contention is material, i.e., a fact that might affect the

21  outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

22  248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

23  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

24  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

25  1436 (9th Cir. 1987).

26  /////

1        In the endeavor to establish the existence of a factual dispute, the opposing party

2 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

5 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

6 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations omitted).

7        "In evaluating the evidence to determine whether there is a genuine issue of fact,"

8 the court draws "all reasonable inferences supported by the evidence in favor of the non-moving

9 party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

10 the opposing party's obligation to produce a factual predicate from which the inference may be

11 drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

12 aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

13 party "must do more than simply show that there is some metaphysical doubt as to the material

14 facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

15 nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

16 omitted).

17        On November 16, 2011 and October 18, 2012, the court advised plaintiff of the

18 requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

19 See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); see also Rand v. Rowland, 154 F.3d 952, 957

20 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  In addition,

21 defendants served the required notice with their motion for summary judgment.  (See Notice filed

22 Nov. 1, 2012 (ECF No. 84).)

23 /////

24 /////

25 /////

26 /////

ANALYSIS

I. Denial/Confiscation of Robert Greene Books

    A. Undisputed Facts

        From November 18, 2008 to September 20, 2010, plaintiff was incarcerated at High Desert State Prison (High Desert).  (Ex. S to Decl. of Diana Esquivel in Supp. of Defs.' Mot. for Summ. J. (ECF No. 82-7), Dep. of Brian Darnell Edwards at 20:21-21:1.)  Plaintiff was in possession of two books by Robert Greene, one entitled *The 48 Laws of Power* and one entitled *The Art of Seduction*.  (Id. at 41:17-20.)  Plaintiff had previously had *The 48 Laws of Power* in his possession while at High Desert.  (Id. at 41:10-14.)

        On January 24, 2009, the two books were confiscated as contraband during a mass search of cells at High Desert.  (Id. at 42:7-23.)  Defendant Perez was not present during the search.  (Id. at 42:24-25.)  Defendant Perez did not ban the books.  (Decl. of T. Perez in Supp. of Defs.' Mot. for Summ. J. filed Oct. 31, 2012 (Decl. of Perez) (ECF No. 82-4) at ¶ 7.)  The books were banned by the Warden's office at High Desert on the recommendation, made in a December 2006 memorandum, to prohibit various books and publications, including the two confiscated from plaintiff in 2009.  (Id. at ¶¶ 5, 7.)

        On March 16, 2009, defendant Perez responded to the inmate appeal plaintiff filed following the confiscation of the books.  (Id. at ¶ 4.)  In the response to that inmate appeal, defendant Perez "explained why the books were prohibited at the prison."  (Id.)

    B. First Amendment

        Plaintiff claims that the confiscation of the two Robert Greene books violated his rights under the First Amendment.[2]  Defendant Perez seeks summary judgment in his favor on

/////

---

    [2]  Plaintiff also challenges the ban on a third Robert Greene book entitled "The 33 Strategies of War."  (See TAC (ECF No. 30) at 6.)  That book was banned at High Desert, but from the evidence before the court on summary judgment it does not appear plaintiff possessed or attempted to possess that book.

1  this claim on the ground that banning the books was reasonably related to a legitimate

2  penological interest.

3          A prison inmate "'retains those First Amendment rights that are not 'inconsistent

4  with his status as a prisoner or with the legitimate penological objectives of the corrections

5  system.'"' Ashker v. California Dept. of Corrections, 350 F.3d 917, 922 (9th Cir. 2003) (quoting

6  Hargis v. Foster, 312 F.3d 404, 409 (9th Cir. 2002) (internal citation omitted)).

7          A prison regulation that impinges on inmates' constitutional rights
           therefore is valid only if it is "reasonably related to legitimate
8          penological interests." Turner [v. Safley], 482 U.S. 78] at 88, 107
           S.Ct. 2254 [(1987)]. "[A] regulation cannot be sustained where the
9          logical connection between the regulation and the asserted goal is
           so remote as to render the policy arbitrary or irrational." Id. at 89,
10         107 S.Ct. 2254. Nonetheless, deference is accorded to prison
           authorities in order to avoid "hamper[ing] their ability to anticipate
11         security problems and to adopt innovative solutions to the
           intractable problems of prison administration." Id. at 85, 88, 107
12         S.Ct. 2254.

13  Ashker, 350 F.3d at 922. The court looks at four factors to determine whether a prison regulation

14  is "reasonably related to a legitimate penological interest." Id. (citing Turner).

15         (1) whether the regulation is rationally related to a legitimate and
           neutral governmental objective; (2) whether there are alternative
16         avenues that remain open to the inmates to exercise the right; (3)
           the impact that accommodating the asserted right will have on
17         other guards and prisoners, and on the allocation of prison
           resources; and (4) whether the existence of easy and obvious
18         alternatives indicates that the regulation is an exaggerated response
           by prison officials.

19

20  Id. (quoting Morrison v. Hall, 261 F.3d 896, 901 (9th Cir. 2001) (internal citation omitted)).

21         The first factor requires examination of the relationship between the regulation

22  and the asserted governmental interest or objective. The relationship must be "rational" and the

23  asserted governmental interest "legitimate and neutral." Ashker, 350 F.3d at 922.

24         In support of their motion for summary judgment, defendants have presented

25  evidence that the decision to ban the two Robert Greene books seized from plaintiff was based on

26  a determination that "the books posed a threat to the safety and security of the institution, staff,

                                                6

1   and inmates." (Decl. of Perez (ECF No. 82-4) at ¶ 5.)  Of course, prison safety and security are

2   legitimate penological objectives.  See Ashker, 350 F.3d at 922.  Defendants have come forward

3   with evidence that the books in question were banned at High Desert by the Warden's office on

4   the recommendation of the Institution Gang Investigator and the Investigative Services Unit.

5   (Decl. of Perez (ECF No. 82-4) at ¶¶ 5, 7.)  As explained by defendant Perez in his declaration,

6   the ban was implemented by High Desert prison officials for the following reasons:

7           8.  The 48 Laws of Power is a guide on how to gain power and
            preserve it, and The Art of Seduction is a manuscript on how to
8           manipulate, overcome, and attack a target.

9           9.  HDSP houses Level III and IV inmates which are the most
            violent of inmates in CDCR's system.  Among the inmates housed
10          at HDSP are those convicted of murder, gang related activities, and sexual offenses.

11          10.  Permitting an inmate to posses the Greene books at HDSP may
            incite violence against inmates and staff because an inmate may
12          attempt to practice the lessons outlined in the books.  Many of the
            gang turf wars that plague the streets continue in prison, including
13          HDSP.  Inmate racial groups and prison gangs struggle to obtain or
            maintain power or influence over other inmates through violence.
14          And sexual predators target inmates who they consider weak or
            vulnerable.  The Greene books provide a road map for
15          manipulating and controlling individuals.  This in turn leads to a
            greater number of incidents of violence that puts the institution,
16          staff, and inmates at risk.

17          11.  Although HDSP banned the Greene books, the prison did not
            prohibit books or publications about the historical events or figures
18          or philosophical theories referenced in the Greene books.

19
    Decl. of Perez (ECF No. 82-4) at ¶¶8-11.
20
            Defendant Perez did not make the decision to ban the books from High Desert, id.
21
    at ¶ 7, nor does he aver that he has reviewed the books.  (See Decl. of Perez, passim.)  The two
22
    books at issue are not part of the evidentiary record placed before the court by the parties on
23
    summary judgment.  Cf. Bahrampour v. Lampert, 356 F.3d 969, 974 (9th Cir. 2004) (banned
24
    materials were part of evidentiary record before district and appellate court on summary
25
    judgment); see also Lampley v. Buss, Cause No. 2:10-CV-338-TLS, 2012 WL 3862538, *3
26

1   (N.D. Ind. Sept. 5, 2012) (summary judgment granted to defendant prison officials on plaintiff's

2   First Amendment claim challenging a prison's ban on "The Art of Seduction" and other books

3   where the defendants' motion for summary judgment was supported by the declaration of the

4   defendant prison Mail Clerk who had examined the books, identified objectionable content in

5   violation of governing regulations and concluded that the publications must be excluded from the

6   facility as a threat to its security).   Moreover, here, on summary judgment defendants have not

7   presented any declaration or testimony from the prison officials who recommended

8   implementation of the ban or from those who imposed the ban, concerning the process that led to

9   the implementation of the ban.   Cf. Bahrampour, 356 F.3d at 972.   Nor have the defendants

10  presented any expert opinion declaration or testimony concerning the books and their potential

11  effect on inmates.

12          Defendants have the burden on this motion of demonstrating that they are entitled

13  to judgment as a matter of law.   See Fed. R. Civ. P. 56.   The evidence presented by defendants in

14  support of the pending motion for summary judgment is insufficient, without more, to support

15  the ban on the Robert Greene books or the confiscation of those books from plaintiff.[3]

16  Specifically, neither the books themselves nor a declaration from anyone who has reviewed the

17  books in question have been offered into evidence on summary judgment.   Defendant Perez's

18  conclusory assertions regarding the contents of the books and their potential links to prison

19  violence are an inadequate evidentiary basis upon which to demonstrate as a matter of law the

20  required rational connection between the ban on the books and the asserted penological

21  justification for that ban.

22          For this reason, this court finds that defendant Perez has not met his burden of

23  showing that he is entitled to summary judgment with respect to plaintiff's First Amendment

24

25          [3] Nothing in these findings and recommendations should be construed as a finding that
    the ban was improper.   This court finds only that there is not enough evidence in the record to
26  make the assessment of the ban required by Turner.

1    claim.  On this claim, the defendants' motion for summary judgment should therefore be denied.

2        C.  Fourth Amendment

3            Plaintiff also claims that the confiscation of his two Robert Greene books violated

4    his rights under the Fourth Amendment.  Defendant Perez seeks summary judgment in his favor

5    on the grounds that plaintiff has no Fourth Amendment protection against a search of his cell and

6    on the ground that defendant Perez did not conduct the cell search in question.

7            Prison inmates have no Fourth Amendment protection from searches of their

8    prison cells.  See Hudson v. Palmer, 468 U.S. 517, 516 (1984).  Moreover, the undisputed facts

9    before the court on summary judgment show that defendant Perez did not conduct the search of

10   plaintiff's cell.  For these reasons, defendant Perez is entitled to summary judgment on plaintiff's

11   Fourth Amendment claim.

12       D.  Due Process

13           Defendant Perez also seeks summary judgment in his favor with respect to

14   plaintiff's claim that confiscation of the books violated his rights under the Fourteenth

15   Amendment.  As defendant Perez contends, whether the confiscation of the books violated the

16   Fourteenth Amendment turns on the reasonableness of the official decision to ban the books,

17   which is resolved with reference to the four factors set out in Turner.  For the reasons explained

18   in section I(B) of these findings and recommendations, the court concludes that defendant Perez

19   has not presented sufficient evidence on summary judgment to establish as a matter of law that

20   the ban on the books was rationally related to a legitimate penological objective.  Accordingly,

21   defendant Perez he has not demonstrated his entitlement to summary judgment on plaintiff's due

22   process claim and the motion should be denied in this regard.

23   II.  Interference with Access to the Courts

24           Plaintiff also claims that defendants Simpson, Williams, and Davis violated his

25   constitutional right of access to the courts on numerous occasions.  In addition, plaintiff has

26   included Warden Mike D. McDonald as a defendant in this cause of action.  (See TAC filed Apr.

22, 2011 (ECF No. 30) at 7.)  Defendants seek summary judgment in their favor on this claim on the grounds that none of them denied plaintiff access to the prison law library or to legal materials and that plaintiff did not suffer any cognizable injury to his right to access the courts. Defendant McDonald also seeks summary judgment on the ground that he is named as a defendant based solely on his supervisorial role at High Desert, which is not a permissible basis for imposition of liability in this § 1983 action.

In Lewis v. Casey, 518 U.S. 343 (1996), the United States Supreme Court held that prison inmates have a constitutionally protected right to access the courts to bring civil rights actions to challenge their conditions of confinement and to bring challenges to their criminal convictions.  Lewis v. Casey, 518 U.S. at 351.  The right of access to the courts "guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Id. at 356. To prevent summary judgment for defendants, plaintiff must present evidence, sufficient to create a genuine issue of material fact, that defendants by their acts prevented him from bringing, or caused him to lose, an actionable claim of this type.  Id.

In support of their motion for summary judgment, defendants present evidence of the disposition of seventeen separate legal actions filed by plaintiff during the time frame relevant to this action.[4]  Plaintiff testified about thirteen of those actions at his deposition taken in connection with this civil action.  (See Dep. of Brian Darnell Edwards, May 17, 2012 (Edwards Dep.) (ECF No. 82-7) at 69:4-82:14.)  In his opposition to the pending motion for summary judgment, plaintiff focuses on the disposition of six of those cases:  California Supreme Court Case No. S168138; U.S.D.C. Central California Case No. 08-7565; United States Court Appeals for the Ninth Circuit Case No. 08-55442, and three state court cases, a small claims court case #

---

[4]  Pursuant to Federal Rule of Evidence 201(d), defendants request that the court take judicial notice of relevant records in those actions.  (ECF No. 83)  Good cause appearing, defendants' request for judicial notice is granted.

1    09S00557; a state habeas case which plaintiff identifies as "out of" YA030468-10[5] and denied on

2    October 29, 2009; and a Lassen County case that plaintiff appears to identify by umber 49074.

3    (Pl.'s Opp'n filed Dec. 14, 2012 (ECF No. 94) at 6-10.)  The evidence tendered by defendants

4    establish that none of the cases cited by plaintiff in his opposition were lost due to any alleged

5    interference with petitioner's access to the law library or legal materials.  (See Ex. C to RJN (Cal.

6    S. Ct. Case Number S168138 summarily denied); Ex. D to RJN (U.S.D.C. Central Cal. Case No.

7    08-7565 dismissed habeas petition because it challenged conditions of plaintiff's confinement

8    and court declined to construe it as a civil rights action); Ex. B to RJN (In Ninth Circuit Case No.

9    08-55442 court denied request for certificate of appealability and informed plaintiff how to file a

10   motion for leave to file a successive petition); Ex. F to RJN (Small Claims Case # 09S00557

11   denied on the merits); Ex. L to RJN (Lassen County SC 48999 denied on grounds, inter alia, of

12   government immunity and failure to exhaust administrative remedies); Ex. M to RJN (state court

13   of appeal habeas petition denied as untimely and because it raised issues that should have been

14   raised on appeal).  In none of those cases was the disposition caused by or a result of any alleged

15   act or omission by any defendant in this action prevented plaintiff from bringing, or causing him

16   to lose, an actionable claim.

17         Defendants have met their burden of showing that there is no genuine dispute of

18   material fact concerning the disposition of any action cited by plaintiff to support his claim of

19   interference with access to the courts.  Moreover, the undisputed evidence before the court on

20   summary judgment shows that none of the defendants caused any cognizable injury to plaintiff's

21   constitutional right to access the courts.  Defendants are therefore entitled to summary judgment

22   on this claim.

23   /////

24   /////

25

26   [5]  This is the case number for the criminal case from which petitioner's commitment
     offense stemmed.  (See Ex. A to Defs.' Req. for Judicial Notice (RJN) (ECF No. 83).)

III.  Retaliation

Defendants have moved for summary judgment in their favor on a purported retaliation claim in plaintiff's third amended complaint.  The court has reviewed the third amended complaint and finds that the only allegation of retaliation contained therein to be too vague and conclusory to support a cognizable retaliation claim.  (See TAC at 9, ¶ 22.)  The court also notes that there is no allegation in the  third amended complaint that plaintiff was denied access to the prison law library due to his engagement in any protected First Amendment activity.  Cf. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (setting forth the elements of a retaliation claim brought by a prisoner).  To the extent plaintiff's lone allegation referring to retaliation in his third amended complaint might be construed as an attempt to allege a retaliation claim, such claim should be dismissed as not cognizable.

IV.  Qualified Immunity

Finally, defendants contend they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Resolving the defense of qualified immunity involves a two-step process:  the court must decide 1) whether the plaintiff has alleged or shown a violation of a constitutional right; and 2) whether the right at issue was clearly established at the time of defendant's alleged misconduct.[6]  "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  Pearson, 555 U.S. at 232.

Because defendants are entitled to summary judgment on all claims except plaintiff's First Amendment and Due Process claims against defendant Perez, the court will only address the qualified immunity defense with respect to those related claims.  Defendant Perez has

---

[6]  Following the decision in Pearson, courts are not required to address both steps of the process in that order.  See Pearson, 555 U.S. at 811.

1  the burden of establishing that he is entitled to qualified immunity.  See Moreno v. Baca, 431

2  F.3d 633, 638 (9th Cir. 2005) ("Because the moving defendant bears the burden of proof on the

3  issue of qualified immunity, he or she must produce sufficient evidence to require the plaintiff to

4  go beyond his or her pleadings."); Munger v. City of Glasgow Police Dept., 227 F.3d 1082, 1087

5  (9th Cir. 2000).  Defendant Perez contends that even if the evidence established a violation of

6  plaintiff's First Amendment rights, he is nonetheless entitled to qualified immunity because  he

7  "did not institute the ban, but simply enforced a decision made by the Warden based on

8  information provided by the IGI and the ISU" and a reasonable officer in his position would have

9  believed it was lawful to do so.  (Ps&As in Supp. of MSJ filed Oct. 31, 2012 (ECF No. 82-1) at

10  14.)  In so arguing, defendant Perez misperceives the relevant inquiry.

11         At all times relevant to this action, the relevant principles of First Amendment

12  jurisprudence were clearly established.[7]  Plaintiff has sufficiently alleged a violation of his First

13  Amendment rights and for the reasons set forth in these findings and recommendations defendant

14  Perez has not come forward with sufficient evidence to establish that there was a rational

15  connection between the ban on the books in question and the asserted justification of prison

16  security.  The dearth of sufficient evidence to resolve that question also precludes a finding on

17  summary judgment that defendant Perez is entitled to qualified immunity.

18                                        CONCLUSION

19         In accordance with the above, IT IS HEREBY ORDERED that:

20         1.  Plaintiff's December 10, 2012 motion for court ordered access to the law

21  library (ECF No. 93) is denied as moot;

22         2.  Plaintiff's December 17, 2012 motion for a Rule 56(d) continuance and

23  extension of time to conduct discovery (ECF No. 96) is denied; and

24  _____

25        [7]  The plaintiff bears the burden of showing that the constitutional right at issue was
    clearly established.  Alston v. Read, 663 F.3d 1094, 1098 (9th Cir. 2011) (citing Sorrels v.
26  McKee, 290 F.3d 965, 969 (9th Cir. 2002).

IT IS HEREBY RECOMMENDED that:

1. Defendants' October 31, 2012 motion for summary judgment be granted in part and denied in part as follows:

a. Any retaliation claim in the third amended complaint be dismissed for failure to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A;

b. Summary judgment be granted for defendant Perez on plaintiff's Fourth Amendment claim and in favor of the remaining defendants with respect on plaintiff's claim of interference with access to the courts; and

c. Summary judgment be denied for defendant Perez on the merits of plaintiff's First Amendment claim, Fourteenth Amendment Due Process claim and on the defense of qualified immunity as to those claims.

2. This matter be referred back to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 21, 2013.

_Dale A. Drozd_

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

12
edwa1264.msj

14